**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

BOTANIC TONICS LLC,

        *Plaintiff*,

    *v.*

KENT LEONHARDT, West Virginia
Department of Agriculture Commissioner, in
his individual capacity,

        *Defendants*.

Case No. 2:25-cv-00680

## COMPLAINT

COMES NOW, Plaintiff, Botanic Tonics, LLC ("BT"), by counsel, and hereby files the following Complaint against Kent Leonhardt, Commissioner of the West Virginia Department of Agriculture ("Defendant"), in his individual capacity, for acting under color of state law to violate BT's rights under the U.S. Constitution. In support of its Complaint, BT alleges and states as follows:

## INTRODUCTION

1.    BT brings this action to vindicate its federal constitutional rights by an order of this Court awarding compensatory damages against Defendant for violating BT's rights under the Dormant Commerce Clause, Article I, Sect. 8, Cl. 3 of the U.S. Constitution; under the Supremacy Clause, Article VI, Cl. 2 of the U.S. Constitution; and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, Amend. XIV, Sect. 1 of the U.S. Constitution.

## PARTIES

2.      Plaintiff BT is a limited liability company organized under the state of Delaware with its principal place of business at 13105 E. 61st St., Broken Arrow, OK 74012.

3.      BT conducts business in West Virginia through retail outlets and distributors who sell BT's *feel free™*.

4.      Defendant is the Commissioner of the West Virginia Department of Agriculture ("WVDA"). He is sued in his individual capacity. WVDA is a state government agency with a statutory mandate to protect the state's food supply, plant, and animal health and promote food safety, provide strategic planning and emergency response, and foster economic growth within the agricultural sector.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. 1331 because BT's claims at Counts I and IV arise under the laws of the United States of America.  Each count alleges the violation of a right secured by the Constitution and laws of the United States.

6.      BT brings Counts II and III of this action to vindicate BT's equal protection and due process rights, protected by the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. 1983. This Court has original jurisdiction over this civil rights action, pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      BT is seeking declaratory judgment and compensatory damages pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (compensatory damages).

8.     Venue is proper in this Court because the Defendant is subject to personal jurisdiction within the Southern District of West Virginia and the events giving rise to BT's claims occurred in the Southern District of West Virginia.

## STANDING

9.     Through willful acts in derogation of the Constitution of the United States, Defendant is acting under color of state law against BT in a manner that bars BT from selling products via interstate commerce in violation of the Commerce Clause of the U.S. Constitution; the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Further, Defendant's willful acts are unconstitutional in that those acts are preempted by federal law and constitute an unlawful Bill of Attainder.

10.     Defendant's actions have resulted in lost product sales in the State of West Virginia as early as December of 2024. BT has sustained a monthly sales and business opportunity loss of approximately one hundred fifty-three thousand eight hundred and twenty-two dollars ($153,822). Accordingly, as of the filing of this complaint, total compensatory damages resulting from Defendant's decision are estimated to be one million five hundred thirty-eight thousand eight hundred twenty dollars ($1,538,820), increasing daily.

## FACTUAL BACKGROUND

11.     To sell or distribute a product containing kratom in West Virginia, an individual or entity must be authorized by WVDA to do so pursuant to W.Va. Code § 19-12F-1, et. seq.

12.     On January 14, 2025, in compliance with W.Va. Code §§ 19-12F-4 and 19-12F-8, BT mailed its application for registration and authority to market *feel free™*, a combination dried leaf kratom and noble kava root dietary supplement, to WVDA along with a registration

fee of two thousand two hundred dollars ($2,200). *See* January 14, 2025, Applications attached hereto as Exhibit A. WVDA cashed BT's registration fee on January 31, 2025.

13.     Shortly after cashing BT's registration fee, Destiny Helmick, Hemp, and Kratom Program Manager for the WVDA and an agent of Defendant, informed BT that WVDA would refuse to process and accept BT's application for registration. On information and belief, Defendant caused that decision against Defendant to be made and to be communicated to Plaintiff.

14.     On February 11, 2025, following a discussion with Ms. Helmick, BT sent WVDA a letter with specified scientific and legal information, providing all relevant toxicological data and providing expert opinions from leading toxicologists establishing *feel free*™ at the dose levels recommended on its label lacked any ingredient sufficient to cause illness or injury and presented no significant or unreasonable risk of illness or injury to healthy adult consumers of the product (the product label limits use to healthy adult consumers, age 21 and older). *See* February 11, 2025, letter attached hereto as Exhibit B.

15.     BT's February 11, 2025 letter included the expert opinions of two renowned kratom and kava experts, Dr. Oliver Grundmann, Professor of Pharmacology at the University of Florida, and Dr. Robert Verkerk, toxicologist, environmental scientist, nutrition scientist, and Fellow of the American College of Nutrition. The submission also included the expert opinion of Dr. Michael John Glade, a toxicologist and former President of the American College of Nutrition, as well as a former Senior Scientist of the American Medical Association. Doctors Grudmann, Verkerk, and Glade each independently reviewed all publicly available evidence concerning kratom and kava, the Food and Drug Administration's clinical trial on the same kratom leaf contained in *feel free*™, and the published peer reviewed *feel free*™ clinical trial,

4

all of which corroborated that *feel free*™ at the dose levels recommended and specified on its label lacked any ingredient sufficient to cause illness or injury and presented no significant or unreasonable risk of illness or injury to healthy adult consumers of the product.

16.    Upon information and belief, neither Defendant nor WVDA have performed any clinical trial on BT's products or otherwise possess evidence directly contradicting the proof of safety provided by BT.

17.    By letter of February 24, 2024, Defendant wrote to counsel for BT and provided his bases for refusing to accept the BT application for registration and authorization to sell *feel free*™ in West Virginia. Defendant provided three bases for his determination not to allow *feel free*™ to be sold in West Virginia, doing so under color of state law but upon grounds nowhere present under state or federal law. *See* February 24, 2024, letter attached hereto as Exhibit C.

18.    First, in his letter of February 24, 2025, Defendant declared that "kava is not currently recognized as Generally Recognized As Safe (GRAS) in accordance with 21 CFR Part 170.30" of the rules of the federal Food and Drug Administration. Those rules apply to food additives. Based on that assumption, he declared "any supplement containing Kava, which is not GRAS, cannot be legally used as an ingredient in foods or beverages." *Id*.

19.    Second, in his letter of February 24, 2025, without referencing any of the scientific material, data, and expert opinions that BT supplied to WVDA on February 11, 2025, Defendant declared that there "is insufficient evidence to ensure the safety of combining kratom and kava, and until further safety data is provided, we cannot approve the request to process such a product." *Id*.

20.     Third, in his letter of February 24, 2025, Defendant recited that "under CSR § 61-30-3.1 and the West Virginia Code . . . the WVDA is authorized to deny products that are considered to be harmful." *Id*.

21.     On March 7, 2025, counsel for BT responded to Defendant's February 24, 2025, letter by providing Defendant and WVDA with additional information and analysis and requesting that Defendant reconsider his decision. *See* March 7, 2025, letter attached hereto as Exhibit D.

22.     BT's March 7, 2025, response first explained that the food additive provisions of the FDA's enabling regulations, relied upon by Defendant, did not apply to *feel free*™ because *feel free*™ is a dietary supplement, and explained that the federal Food Drug and Cosmetic Act (FDCA) forbids application of food additive regulations to bar the marketing and sale of dietary supplements in 21 USC 321(s)(6), citing the legislative history underlying that provision in S. Rep. 103-410, S. Rep. No. 410, 104rd Cong., 2nd Sess. 1994, 1994 WL 562259 (Leg. Hist.) ("the purpose of this legislation, as enunciated in section 2, is . . . to clarify that dietary supplements are not drugs or food additives . . .").

23.     BT further explained that Defendant's reliance on the federal food additive provisions of the FDCA was additionally misplaced because even if kava were deemed a food additive in this context (it is not), it would still be lawful for inclusion in a food because it is exempt from the definition of "food additive" under 21 U.S.C. § 321(s) due to grandfathering, because it was commonly used as a food before January 1, 1958 (the effective date of the Food Additive Amendments of 1958).  *Id*.

24.     BT summarized its explanation, stating:

> The kava extract used in Feel Free is indistinguishable from (is the compositional equivalent of) the kava consumed in Polynesian

communities before January 1, 1958, including in Hawaii. See
Botanic Tonics Chief Science Officer Dr. Ramsey Atallah's
declaration. Indeed, for 18 years prior to January 1, 1958, the kava
here in issue was consumed without report of serious adverse
effects. Consequently, it is exempt under 21 USC 321(s) from the
definition of a food additive. In short, kava is not a "food additive"
by operation of federal law, and no state under the U.S.
Constitution's Supremacy Clause may interpret it to be so and
countermand 21 USC 321(s).

*Id*.

25. BT next addressed Defendant's statement that "insufficient evidence" had been
supplied to support the safety of *feel free*™ by resupplying the voluminous prior submission
of scientific, toxicologic, and clinical trial materials and explaining that the robust submission
supplied by BT was "far beyond the evidence supplied to the Department by any other
applicant approved by the Department for marketing a kratom product in West Virginia." *Id*.

26. BT then addressed state law invoked by Defendant, explaining that Defendant and
WVDA lacked any evidence, let alone a reasonable basis, to conclude that *feel free*™ presented
a significant or unreasonable risk of illness or injury or was "contaminated" or "made . . .
unsafe by biological, chemical, or physical additives," West Virginia Code §§ 19-12E-12(3);
19-12F-3, because *feel free*™ contained no ingredient that was biologically, chemically, or
physically altered in any way from its natural state. *Id*. Moreover, there was no evidence of
any impurity in the product. BT explained, "[t]here is no more rigorous testing for safety
performed in the entire kratom industry than that performed by Botanic Tonics and you have
not required any proof of such testing from any other applicant heretofore granted registration
to sell kratom in West Virginia." *Id*.

27. BT refuted Defendant's contention that it could deny registration of a product based
on an unproven "potential" for harm, explaining: "[T]he West Virginia Code does not

empower the Department to deny applications for registration to parties on the basis that the product creates 'potential harm' (nor could it consistent with the Due Process Clause void for vagueness doctrine); rather, the Code empowers the Department to act against products proven impure and unsafe because of biological, chemical, or physical additives, none of which are present in Feel Free."

28.    BT also faulted Defendant for discriminating against its out-of-state product in favor of demonstrably unsafe products allowed to be registered. BT wrote:

> On the one hand, [the Department] has authorized the following products which include 7-hydroxymitragynine synthetic concentrates at levels established in the scientific literature to create morphine-like effects and dependencies: Roxy Instamix 128 Jar-Berry mix; 80 g, Roxy Instamix 128 mg Jar-Citrus; 80g Roxy Instamix 128mg Jar-Passion Fruit; 80g, Roxy Instamix 16mc Sachet-berry mix; 10g, Roxy Instamix 16 mg Sachet-Orange; 10g, Roxy Instamix 16mg Sachet-berry mix; 10 g, Roxy Complex Alkaloids Tablets 16 mg – 2ct, 10ct, 30ct; Roxy Complex Alkaloid Tablets 20 mg-Triple Berry-10ct; Roxy Complex Alkaloids Tablets 20mg – Lemonade-10ct; Roxy Complex Alkaloid Tablets 20mg-Tropical-10ct.  See the Report of Dr. Robert Verkerk. Those products are registered by this Department despite no proof whatsoever that when consumed in accordance with label instructions they do not present a significant or unreasonable risk of illness or injury. Indeed, the evidence not reviewed by the Department before it granted market access establishes lack of safety and includes wrongful death and class action suits against 7-hydroxymitragynine nationwide. And yet, for not a single one of these applicants did the Department demand proof of safety of any kind, let alone that which would be adequate to establish purity and safety.

29.    BT further explained:

> While the Department turns a blind eye to the dangerous products it has allowed into the market, registering all of those listed above, it without reasoned explanation or scientific proof deviates from that pattern in an entirely arbitrary and capricious manner by rejecting *in silentio* the overwhelming weight of expert scientific opinion and a well-designed clinical trial on Feel Free safety that we have supplied to you.  The Department has not, and cannot, articulate any sound

safety basis for placing the public in imminent peril of provable
injury in the case of the 7-hydroxymitragynine products it has
registered (listed above), while simultaneously denying market
entry to Feel Free, a product distinguished from all others approved
by the Department because of its documented substantial safety
evidence presented to the Department.

30. On April 8, 2025, Defendant reiterated his decision without supplying any

additional substantive grounds, stating in toto: "Hello Mr. Emord. The West Virginia

Department of Agriculture stands by the denial of any kratom products containing kava. The

two together can produce unexpected results which causes [sic] for health concerns to our

citizens. Thank you." *See* April 8 email attached hereto as Exhibit E.

31. On May 8, 2025, BT's counsel sent a letter to Defendant requesting a full

evidentiary hearing as required under W.Va. Code § 29A-5-1. *See* May 8, 2025, letter attached

hereto as Exhibit F.

32. On June 4, 2025, Defendant, without consultation with Plaintiff, issued a

"Summons for Informal Hearing" to BT's counsel, unilaterally scheduling a hearing barely a

week later on June 11, 2025, before Jeffrey Blayde. *See* June 4, 2025, summons attached hereto

as Exhibit G.

33. On June 11, 2025, the parties attended the scheduled hearing. Defendant did not

appear in person. WVDA was represented by other employees and by the Department's chief

counsel. During the hearing, counsel for BT presented evidence regarding the safety and

effectiveness of *feel free*™. WVDA presented no evidence. There was then an off-record

breakout session where the parties discussed the evidence presented, and WVDA requested

some additional information not directly germane to *feel free*™ safety from BT after the

hearing. At that time, the hearing was suspended so that WVDA could consider the evidence

presented.

34.     On June 27, 2025, counsel for BT sent counsel for Defendant and WVDA a letter providing additional information and further research detailing the safety testing and current Good Manufacturing Practices Botanic used in the production of *feel free*™. *See* June 27, 2025, letter attached hereto as Exhibit H.

35.     After receiving no response for over a month, counsel for BT sent a letter to counsel for Defendant and WVDA on August 14, 2025, explaining how recent statements by the FDA further highlight the safety of the whole kratom leaf used in *feel free*™, as opposed to more concentrated extracts in other Kratom products approved by Defendant and WVDA. *See* August 14, 2025, letter attached hereto as Exhibit I.

36.     On September 10, 2025, counsel for BT received an email from Jakeb H. Shuck, Staff Attorney for WVDA at the behest of Defendant, which stated on behalf of Defendant and in relevant part that the "West Virginia Department of Agriculture has reached a final determination regarding your client's product. The Department will not approve the registration, as the product is not certified as generally recognized as safe (GRAS)." *See* September 10, 2025, email attached hereto as Exhibit J. On October 8, 2025, BT noticed an appeal of this "final determination" in the Intermediate Court of Appeals of West Virginia. A short time later, counsel for BT was contacted by the West Virginia Attorney General's Office and received notice that WVDA would provide BT with a full evidentiary hearing as required under the West Virginia Administrative Procedures Act.

## COUNT I

### (42 U.S.C. § 1983: Deprivation of BT's Rights to Commerce Free of Discrimination Under the Dormant Commerce Clause)

37.     BT restates the prior and subsequent allegations as if set forth fully herein.

38.     Defendant, acting under color of state law, is depriving BT of rights secured by the United States Constitution through abuse of positions given to Defendant by West Virginia, including depriving BT of the right to sell a demonstrably safe whole leaf kratom and noble kava root dietary supplement, *feel free*™, in West Virginia as protected by the Dormant Commerce Clause of the United States Constitution, Article I, § 8, Clause 3, against discrimination in favor of numerous demonstrably unsafe adulterated, highly addictive, and injurious kratom products that Defendant allows to be sold in West Virginia.

39.     Defendant has prohibited the sale of *feel free*™ in West Virginia based on an arbitrary and legally unfounded determination that combination kratom and kava products are not "Generally Recognized As Safe (GRAS) in accordance with 21 CFR Part 170.30" of the rules of the FDA and are unapproved and illegal "food additives" under the federal Food Drug and Cosmetic Act. Exhibit C. This patently erroneous application of federal law by Defendant (who has no authority to interpret or impose federal law) excludes a demonstrably safe dietary supplement imported into West Virginia from outside the state, *feel free*™, while Defendant allows marketing and sale of numerous other kratom products containing ingredients and concentrations of ingredients that are established in scientific literature as causing injury to consumers, including severe addiction.

40.     The discriminatory enforcement has the effect of prohibiting kratom products combined with kava imported into West Virginia by Plaintiff, while protecting from competition other kratom products sold in West Virginia, including those that are demonstrably injurious to consumers even when consumed in accordance with their labeling directions for use.

41.     Thus, Defendant's arbitrary prohibition on kratom and kava combination products has the actual, foreseeable, and intended effect of discriminating against a demonstrably safe kratom product, *feel free™*, from outside the state of West Virginia.

**COUNT II**
**(42 U.S.C. § 1983: Violation of Federal Conflict Preemption under**
**U.S. Const. Art. VI, Cl. 2)**

42.     BT restates the prior and subsequent allegations as if set forth fully herein.

43.     Under the Supremacy Clause of the United States Constitution, state laws that "interfere with, or are contrary to the laws of Congress" are preempted and are therefore invalid. *Gibbons v. Ogden*, 22 U.S. 1, 211, 6 L.Ed. 23 (1824). "Congressional intent governs our determination of whether federal law preempts state law. If Congress so intends, '[p]re-emption ... is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Fireman's Fund v. City of Lodi*, 302 F.3d 928, 941 (9th Cir. 2002).

44.     The FDCA and its accompanying regulations designate food additive products that are "generally recognized as safe" (GRAS). *See* 21 U.S.C. § 321; 21 C.F.R. § 179.30. The GRAS designation applies to food additives. *Id*. The definition of food additives explicitly excludes "an ingredient . . . intended for use in, a dietary supplement." 21 U.S.C. § 321(s)(6). Further, the term "dietary supplement" means, in relevant part, "an herb or other botanical." 21 U.S.C. § 321 (ff)(1)(D).

45.     Congress intentionally excluded dietary supplements from being classified as food additives, and therefore, from any GRAS designation requirements. When enacting the Dietary Supplement Health and Education Act (DSHEA), Congress's intent was to prevent a governmental agency from denying the marketing and sale of dietary supplements on the

grounds that they are not proven GRAS under federal food additive laws. *See* SS. Rep. 103-410, S. Rep. No. 410, 103RD Cong., 2nd Sess. 1994, 1994 WL 562259 (Leg. Hist.) (discussing that the FDA has "attempted to twist the [FDCA] . . . to impede the manufacture and sale of dietary supplements" and, therefore, removing them from the definition of "food additives").

46.     Moreover, both kratom leaf (which has been infused with water and consumed as a food for over 200 years) and noble kava root (which has been infused with water and consumed as a food for over 2000 years) have been in the food supply since before the Food Additive Amendments to the Food, Drug, and Cosmetic Act (before January 1, 1958), causing them to be excluded from "food additive" status under the Act pursuant to 21 U.S.C. § 321(s).

47.     Title 61 Series 30 of the West Virginia Code of State Regulations, titled the Select Plant-Based Derivative Products-Hemp and Kratom, states that the "*Commissioner* may issue manufacturer, processor, distributor, product, and retail permits" for kratom products. W.Va. CSR § 61-30-4.1 (emphasis supplied). It further states that the regulations "provided in this rule are in addition to any requirements imposed by the United States Department of Agriculture, the federal Food and Drug Administration, or any other federal agency with regulatory authority over hemp products." W.Va. CSR § 61-30-3.3.

48.     In his February 24, 2025, letter and again in the September 10, 2025, "final determination", Defendant relied on the "food additive" provisions of the federal FDCA, 21 U.S.C. § 321. In doing so, Defendant misinterpreted and misapplied those provisions, establishing a rule contrary to federal law in violation of the Supremacy Clause of the United States Constitution, Art. VI, cl. 2 (which establishes that federal law takes precedence over contrary state law, including state regulation).

49.     In particular, Defendant has declared the kava in *feel free*™ - a product labeled and sold as a dietary supplement under 21 U.S.C. § 321(ff)) - to be a "food additive" not generally recognized as safe under 21 U.S.C. § 321.  Contrary to that declaration, dietary supplements are expressly exempt from categorization as "food additives" under 21 USC § 321(s)(6) ("The term 'food additive' . . . does not include—(6) an ingredient described in paragraph (ff) in, or intended for use in, a dietary supplement"), which is the meaning intended by the United States Congress in the legislative history supporting that provision of the DSHEA of 1994.  *See* S. Rep. 103-410, S. Rep. No. 410, 103rd Cong., 2nd Sess. 1994, 1994 WL 562259 (Leg. Hist.) ("The purpose of this legislation, as enunciated in Section 2, is . . . to clarify that dietary supplements are not . . . food additives . . ."). A "dietary supplement" is defined, in relevant part, as "an herb or other botanical," such as the kava and kratom used in *feel free*™. 21 U.S.C. § 321 (ff)(1)(D)

50.     Defendant's refusal to process or approve BT's application for *feel free*™ conflicts with, and is preempted by, the FDCA insofar as it:

    a.  Conflicts directly with the requirements of FDCA's GRAS provisions by prohibiting the inclusion of kava as a dietary ingredient in a kratom dietary supplement product;

    b.  Permits the denial of licensure based upon standards BT is exempt from under FDCA;

    c.  Creates an obstacle to the accomplishment and execution of Congress's objectives for DSHEA and FDCA;

    d.  Frustrates Congress's objectives in enacting DSHEA to exempt dietary supplements from FDCA GRAS requirements;

e.  Otherwise conflicts with FDCA.

51.     For these reasons, Defendant's refusal to process or approve BT's application for *feel free™* and its associated enforcement are preempted by FCDA, federal law, and under the Supremacy Clause of the United States Constitution.

52.     Defendant's actions have resulted in lost product sales in the State of West Virginia as early as December of 2024. BT has sustained a monthly sales and business opportunity loss of approximately one hundred fifty-three thousand eight hundred and twenty-two dollars ($153,822). Accordingly, as of the filing of this complaint, total compensatory damages resulting from Defendant's decision are estimated to be one million five hundred thirty-eight thousand eight hundred twenty dollars ($1,538,820), increasing daily

53.     Accordingly, BT is entitled to compensatory damages for the losses it has suffered as a result of the Defendant acting under color of state law to deprive Plaintiff of its rights to the protections afforded by the Supremacy Clause of the United States Constitution.

54.     An actual and justiciable controversy exists between BT and Defendant regarding the validity of the Defendant's determination under federal law. BT is therefore entitled to a declaration under 28 U.S.C. § 2201 that Defendant's decision is preempted and unenforceable.

### COUNT III
### (42 U.S.C. § 1983: Due Process Clause of the Fourteenth Amendment)
### (Violation of the Void for Vagueness Doctrine)

55.     BT restates the prior and subsequent allegations as if set forth fully herein.

56.     Defendant, acting under color of law, issued and enforced an unconstitutionally vague decision in violation of the guarantee of due process set forth in the Fourteenth Amendment to the United States Constitution.

57.    Defendant's decision does not provide BT with any, let alone clear, advance notice and explanation of the precise basis on which WVDA concludes, without regard to relative levels of kratom alkaloids or kavalactones, that all combinations of kratom and kava are harmful to consumers. The enforcement of the decision is based on a false federal legal predicate, is inherently arbitrary, is void of a distinguishing principle, and is discriminatory.

58.    Defendant's decision does not give any fair notice such that a reasonable person could discern in advance what is lawful or unlawful. It was impossible for BT to know before submission of the registration applications to WVDA, from any ruling or statement of the WVDA prior thereto or from anything in state law generally that a combination of kratom and kava product would be prohibited from being sold in West Virginia by Defendant.

59.    Defendant's decision calls for enforcement against all kratom and kava combination products, regardless of the amount of active ingredients, delineating no rational distinguishing principle between combinations that do not present a significant or unreasonable risk of illness or injury and those that do.

60.    Defendant's decision provides no clear distinguishing principle tied to WVDA's enabling Act, such that no reasonable person viewing that decision could comprehend the basis upon which to conclude that *feel free*™ is harmful, particularly against the evidence BT supplied establishing the product to contain active alkaloid and kavalactone levels far beneath levels associated with significant or unreasonable risk of illness or injury.

61.    Accordingly, Defendant's decision is void for vagueness within the meaning of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

62.     Defendant is liable to BT for proper redress under 42 U.S.C. § 1983 because Defendant's decision deprives BT of the rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

63.     BT is entitled to compensatory damages for Defendant's unlawful acts under color of state law to prohibit BT from selling *feel free*™ in West Virginia.

**COUNT IV**
**(42 U.S.C. § 1983: Equal Protection Clause of the Fourteenth Amendment)**

64.     BT restates the allegations set forth above.

65.     BT is similarly situated to others, i.e., those who filed for licensure to sell similar products containing kratom, who were treated more favorably by Defendant and granted their licensure to sell, dispense, and manufacture kratom-based products.

66.     As of September 19, 2025, Defendant has approved three hundred fifty-eight (358) different kratom-based products for sale and has approved four hundred and forty-nine (449) retail sellers of kratom-based products in West Virginia. The approved products are manufactured by approximately twenty-five (25) different business entities. Similarly situated entities make the approved products, and BT has been unequally treated without any rational basis.

67.     Defendant, acting under color of law, issued an unconstitutional decision against BT in violation of the guarantee of equal protection set forth in the Fourteenth Amendment to the United States Constitution.

68.     Specifically, Defendant intentionally treated BT differently from similarly situated individuals, and applied state and federal law and enforced his decision in a discriminatory and arbitrary manner.

69.     Specifically, Defendant registered to sell in West Virginia products that were demonstrably harmful without any requirement of proof of safety, while condemning BT's product *feel free™* as unregistered, despite repeated submission to Defendant of proof establishing its safety.

70.     Defendant's actions lacked any rational basis.

71.     Defendant's actions and his decision on its face and as applied, violate the Equal Protection Clause of the Fourteenth Amendment.

72.     Defendant is liable to BT for proper redress under 42 U.S.C. § 1983 because Defendant's decision deprives BT of the rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

73.     BT is entitled to prospective declaratory relief preventing further enforcement of the discriminatory decision as well as compensatory damages for the lost sales and business opportunity.

### COUNT V
### (Unconstitutional Bill of Attainder)
### (Regulatory Action Solely Against Manufacturers of Kratom/Kava Combination Products in Violation of the Bill of Attainder Clause, Art. I, § 10, Cl 1)

74.     BT restates the allegations set forth above.

75.     A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977).

76.     An unconstitutional bill of attainder improperly singles out an individual for legislatively proscribed punishment, "whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular

persons." *Communist Party of the United States v. Subversive Activities Control Board*, 367 U.S. 1, 86 (1961).

77.     A Bill of Attainder cause of action under Art. I, § 10, cl.1 of the United States Constitution requires: (a) the state law, including a regulatory order, must inflict a punishment, which may include a prohibition against participation in specific kinds of employment; (b) the state law must target specific named or identifiable individuals or groups; and (c) those targeted would otherwise have judicial protections for the activities prohibited by the bill of attainder. All three elements are satisfied based on the facts of this case.

78.     Defendant's decision forbidding the sale of *feel free*™ inflicts punishment in the form of a total exclusion from the West Virginia market on companies that sell combination kratom/kava dietary supplement products.

79.     Defendant's decision targets a specifically defined, readily identifiable group of dietary supplement product sellers for market exclusion: only those that sell dietary supplements that combine kratom and kava. At the time of this complaint, there appears to be at least four such sellers in the West Virginia market. These companies have been denied registration and access to the West Virginia market.

80.     Under W.Va. Code § 19-12F-1, et seq, and its accompanying regulations, BT would have legal protection to sell its kratom and kava combination product in West Virginia but for Defendant's unlawful decision banning the sale of *feel free*™ in West Virginia.

81.     Because the Defendant targets kratom and kava combination product sellers, and imposes on them a punishment of total market exclusion, Defendant's decision violates Art. I, § 10, cl.1 of the United States Constitution.

82.     Accordingly, BT is entitled to relief because the Defendant's decision, as intended, drafted, and applied, constitutes an unconstitutional bill of attainder in relation to BT in violation of Art. I, § 10, cl.1 of the United States Constitution.

## RELIEF REQUESTED

**NOW, THEREFORE,** BT requests a judgment in its favor against Defendant as follows:

A.  Declare that the Defendant's decision is preempted by FDCA and is therefore unenforceable;

B.  Declare that the Defendant's decision is unconstitutional as applied to BT under the Supremacy Clause, art. VI, cl. 2; the Void for Vagueness Doctrine of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution; the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; and the Bill of Attainder Clause of the U.S. Constitution, art. I, § 10, cl. 1;

C.  Award BT compensatory damages in an amount to be determined;

D.  Award BT reasonable attorneys' fees and costs, as appropriate; and

E.  Grant such other and further relief as the Court may deem appropriate.

Plaintiff demands a jury trial on all issues appropriate for a jury determination.

**BOTANIC TONICS, LLC**

By:_____ */s/ Robert L. Massie*_____
                        Of Counsel

Robert L. Massie, Esq. (WVSBN 5743)
Owen A. Reynolds, Esq. (WVSBN 13035)
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, WV 25701
(304) 526-3500

(304) 526-5599 (fax)
Robert.Massie@NelsonMullins.com
Owen.Reynolds@NelsonMullins.com

Jonathan W. Emord, Esq. (*pro hac vice* forthcoming)
**EMORD & ASSOCIATES, P.C.**
11808 Wolf Run Lane
Clifton, VA 20124
(703) 239-8968
jemord@emord.com

**COUNSEL FOR PLAINTIFF BOTANIC
TONICS, LLC**